IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.                                                                      No. 21-cr--00014-VJ1

MUNDO CHARLES BARELA,

   Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM

Mundo Barela requests a reasonable sentence of 84 months, above his guideline range, which is a sentence no greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Mr. Barela, in Paragraph 16 of the PSR (Defendant's Version of Events), confirmed how tragic this crime was for all parties involved including the victim, the victim's family, Mr. Barela and Mr. Barela's family, by stating the following:

> First and foremost, I accept full responsibility for what I have done and I am so tremendously sorry for what happened and that a very good man, Eugene Mancito, has lost his life. I never woke up that morning or, for that matter, have ever at any point in my life had any thoughts of hurting anyone. Eugene Mancito was a good man and I will live with the guilt of being responsible for taking his life away for the rest of my life. I am forever sorry to him, to his family, to his fiancé, who is also my Aunt, and to his recently born child for what I have done. I realize that no words that I say can come close to undoing what I have done but I want them to know that I am forever sorry. If I could take those actions back from that night, I would.
>
> Specifically related to the instant offense, I followed my Aunt to the home next door because she was pregnant and people had been drinking all day and I simply did not

want her to get hurt in any way. I did not walk next door with the intention of doing anything other than protecting her if it were to come to that. When I arrived it was chaos and I was pulled down to the ground and I simply reacted very quickly. I stabbed Eugene multiple times because I became incredibly scared and my hands and motions simply seemed to react to the fear and adrenaline I had rushing through my body at the time. Again, I am in no way making excuses and what I did was incredibly wrong but I want this Court to understand that I never had a bad thought in my mind about Eugene Mancito and this was not something I ever remotely set out to do in advance.

## INTRODUCTION

On January 6, 2021, Mr. Barela pleaded guilty to a one count Information charging him with Voluntary Manslaughter under 18 U.S.C. § 1152 and § 1112(a).

The Presentence Report ("PSR") found a base offense level of 29 and, after applying a 3-level reduction for acceptance of responsibility, Mr. Barela's Total Offense Level is 26. (*See* PSR ¶¶ 23–32.) With a criminal history category of I, the resulting advisory guideline range is 63-78 months. (*See* PSR ¶ 55.)

Pursuant to written plea agreement and Rule 11(c)(1)(C), the government and Mr. Barela agree that a specific sentence of not less than 84 months imprisonment, and not more than 108 months imprisonment, is the appropriate sentence in this case. Mr. Barela's request for 84 months is above the high end of the relevant guideline range.

For reasons detailed below, any sentence more than 84 months would be fundamentally unfair and greater than necessary. Additionally, in order to avoid an unduly harsh sentence as compared to similarly-situated defendants with similar guidelines, Mr. Barela asks the Court to impose a sentence of 84 months. The requested sentence is sufficient but not greater than necessary to satisfy the statutory sentencing goals. See 18 U.S.C. § 3553(a); *Rita v. United States*, 551 U.S. 338, 348 (2007).

Mr. Barela asks the Court to consider his young daughter who Mr. Barela supports financially and emotionally and his desire to be a part of her life going forward, the fact that he has no criminal convictions, his extremely young age, and both his remorse and acceptance of responsibility related to his crime, and sentence him to 84 months.

## BACKGROUND

Mr. Barela was born on November 11, 2001 in Albuquerque, New Mexico. His parents and step-father are all supportive of Mr. Barela. Mr. Barela has many positive relationships with friends and family as is clear with the multiple letters of support. *See* Exhibit A – Letters of Support.

Mr. Barela was in a relationship with Samaria Cervantes since 2016 and they have one daughter together who is 1 year old. Although Mr. Barela and Ms. Cervantes are no longer romantically involved, they remain on excellent co-parenting terms and are both loving and caring parents for their daughter. Ms. Cervantes, in her letter, confirms that: ". . . Mundo was and always has been a great father to our daughter since the day she was born. Since the day she was born Mundo has always been present in her life making sure she always has what she needs, and also making sure she knows her daddy loves and cares for her very much."

Mr. Barela's mother writes the following:

> I'm writing this on behalf of my son Mundo Barela. Mundo is my only child and I have raised him to be respectful, kind hearted, caring, helpful, humble and to love everyone no matter who they are and that's just exactly how Mundo is. He's the type of person that if he sees someone in the need of help he will stop to lend a helping hand or give his last just because he is kind hearted and caring in that way. Mundo has never been in trouble before because he was not the type to be out doing things he knew he wasn't supposed to. He was mostly here at home or

3

> hanging with the handful of friends he had playing basketball, camping, taking his dog for walks and taking care of his daughter. Mundo took on his responsibility as a young father and is a good dad to his daughter Estrella. He would spend all day with her just watching movies or playing with her. They were inseparable. Mundo is missed dearly here at home We never imagined our lives would be forever changed to something like this. Especially because Eugene was part of our family as well and lived here with us from time to time over the past 5 years. Our family grieve every day because of the situation my son is in and because of the loss of Eugene. Eugene was loved by everyone here and he knew he could always come here when he needed a place to go. I never turned him away especially because he was considered part of our family and always will be.

*See* Exhibit A – Letters of Support.

Mr. Barela attended Tularosa High School until the 10th grade. He would like to obtain his GED while in prison. He would also like to take advantage of any and all programming that is available to him. He is a hard worker and has worked hard at both Robert Zook Construction in Alamogordo, New Mexico in 2020 and until the instant offense and, before that, at the Sonic Drive-In in 2019.

Mr. Barela has been detained since his arrest on August 19, 2020.

## LEGAL STANDARD

When imposing a sentence, the district court must "treat the Guidelines as the starting point and initial benchmark." *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)) (quotations omitted). The Guidelines are only advisory, and a district court must next consider the sentencing factors set forth in 18 U.S.C. § 3553(a). A district court should not presume a Guideline sentence will always satisfy § 3553(a), because the Guidelines are only "a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 351 (2007); *United States v. Booker*, 543 U.S. 220, 245 (2005). A district court has a duty

independent from the Sentencing Commission to ensure that the § 3553(a) factors are met. A court is free to reject a Guidelines sentence, "perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita*, 551 U.S. at 350–51. A sentencing judge also "may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101. The sentencing court's central task must be to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

## ARGUMENT

**I.     Sentencing request pursuant to 18 U.S.C. § 3553(a)**

Mr. Barela asks this Court to impose a sentence of 84 months based on the 18 U.S.C. § 3553(a) sentencing factors. A sentencing court should "engage in a holistic inquiry of the § 3553(a) factors." *United States v. Barnes*, 890 F.3d 910, 916 (10th Cir. 2018) (citations omitted). "A district court properly engages in this inquiry when it bases its decision on specific, articulable facts supporting the variance and does not employ an impermissible methodology or rely on facts that would make the decision out of bounds." *United States v. DeRusse*, 859 F.3d 1232, 1236 (10th Cir. 2017).

When determining a sentence, a court must consider the seven statutory factors set forth in § 3553(a). The factors include: (1) The nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the seriousness of the crime, deter future criminal conduct, prevent the defendant from

committing more crimes, and provide rehabilitation; (3) the sentences that are legally available; (4) the Sentencing Guidelines; (5) the Sentencing Commission's policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution. *See* 18 U.S.C. § 3553(a) (1–7). An individualized assessment of all the § 3553(a) factors indicate a sentence of two years would comply with the statutory purposes of sentencing.

### A. Nature and circumstances of the offense

Mr. Barela wants to in no way diminish the magnitude of what has happened. A very good man lost his life. Mr. Barela and Mr. Mancito had absolutely no problems with each other. They had never had any altercations in the past.

The circumstances of that day have forever changed many lives and perhaps could have been avoided. Without placing blame on anyone else, it would be unfair to all involved if some background items were not pointed out. IN the Addendum to the Presentence Report (Doc. 27), it states:

> Multiple witnesses stated that Eugene Mancito began drinking alcohol during the morning hours of July 20, 2020. After the instant offense, several witnesses reported that Rhonda Mancito had previously threatened Mundo Barela that she would get her father to beat Barela up due to Rhonda Mancito's perception that she was being mistreated by Barela. Investigating agents also learned that Rhonda Mancito asked Eugene Mancito to "beat up" Barela on the date of the incident.

While, again, not intending to shirk responsibility, this background information is very important to confirm that Mr. Barela is not a cold-blooded murderer. He went to the house next door intending to protect his Aunt, a fight broke out, it was chaotic, Mr. Barela was

incredibly frightened, fight or flight came into play and Mr. Barela did something completely out of character for him. He must pay a price but he requests that the Court not impose a day more than necessary. He argues that necessary is 84 months.

### B. The history and characteristics of the defendant

Mr. Barela is now 19 years. He is loved and respected by his family, friends and co-parenting wife. *See Exhibit A* – Letters of Support. He is not evil or generally violent. He is committed to never being in any sort of trouble again.

He has consistently worked hard to support himself and his family. (*See* PSR ¶¶ 50–51.). When he is released from prison, Mr. Barela would like to return to be with his mom and be involved with his daughter's life.

Mr. Barela has learned his lesson and promises this Court that he will never make the same mistake again.

### C. Seriousness of the offense, need to promote respect for the law, provide just punishment, and protect the public

The requested sentence takes into account that this is Mr. Barela's first offense, he has a way to support himself, and has a minor child who he helps support. The requested sentence protects the public, because it will deter Mr. Barela from ever repeating a similar crime again.

The Court should consider Mr. Barela's good faith attempt to admit his guilt very soon after his arrest, his financial responsibility of caring for his daughter and the fact that this is his first conviction, to sentence him to 84 months, a sentence sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing.

**D.     The need to avoid unwarranted sentence disparities**

A sentence of 84 months will not result in any unwarranted disparities. in fact, a sentence of 84 months is higher than the high end of his guideline range. It would reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

Mr. Barela is not asking this Court for a non-custodial sentence; he has been in custody since his arrest on August 19, 2020 and would have more than 6 years more to serve. "Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend." *United States v. Qualls*, 373 F.Supp.2d 873, 877 (E.D. Wis. 2005). Mr. Barela has never before been in prison or even in jail. A sentence of 84 months will be sufficient to impress upon him the seriousness of his conduct and deter him from future criminal activity.

## CONCLUSION

For the foregoing reasons, Mr. Barela requests a total sentence of 84 months. This sentence is sufficient but not greater than necessary to fulfill the purposes of sentencing listed in 18 U.S.C. § 3553(a).

    Respectfully submitted,

    FEDERAL PUBLIC DEFENDER
    506 S. Main Street, Suite 400
    Las Cruces, New Mexico 88001
    (575) 527-6930
    *Electronically filed (May 11, 2021)*
    By:   /s/ Daniel Rubin
           DANIEL RUBIN
           Assistant Federal Public Defender